UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JUANEA L. BUTLER, *individually and as*　　　　　CIVIL ACTION
*representative of all others similarly situated*

v.　　　　　　　　　　　　　　　　　　　　　　　　　　NO. 18-6685

DENKA PERFORMANCE ELASTOMER, LLC, ET AL.　　　SECTION "F"

ORDER AND REASONS

Before the Court is the plaintiff's motion to remand for lack of subject matter jurisdiction. For the reasons that follow, the motion is DENIED.

**Background**

This environmental tort litigation arises from the production of neoprene, which allegedly exposes those near the manufacturing plant to concentrated levels of chloroprene well above the upper limit of acceptable risk, resulting in a risk of cancer more than 800 times the national average. People living and working in what environmentalists and the media have dubbed "Cancer Alley" have filed several lawsuits seeking, in some cases, damages, along with injunctive relief in the form of abatement of chloroprene emissions from their industrial neighbor, the Pontchartrain Works facility;

1

the only facility in the United States still manufacturing a synthetic rubber called neoprene, which is made from chloroprene, which the Environmental Protection Agency has classified as a "likely human carcinogen."

This is one of several lawsuits that have been filed in state court and removed to this Court. Juanea L. Butler, on behalf of a putative class, sued Denka Performance Elastomer LLC, E.I. DuPont de Nemours and Company, the State of Louisiana through the Department of Environmental Quality, and the State of Louisiana through the Department of Health. Ms. Butler seeks to proceed individually and as representative of a class of persons defined as:

> (1) Those persons who, at any time from January 1, 2011 through the present, have lived, worked, attended school, and/or actually resided within a geographical boundary of St. John the Baptist Parish (hereinafter referred to as "St. John"), starting at the northwest corner of zip code 70084, then proceeding eastward along I-10 through zip code 70084 and the southside part of zip code 70068, to the northeast corner of the class boundary where Interstate-10 meets the St. John line within zip code 70068 of St. John, then proceeding southward within St. John along the St. John boundary line over the Mississippi River and through zip code 70057 in St. John to LA Hwy. 3127 within zip code 70049, to the southwest corner of the class boundary where LA Highway 3127 meets the St. John parish line within zip code 70049, then proceeding northward within St. John along the St. John parish line, through zip codes 70049, 70090 70051, and 70084 to I-10 within zip code 70084 (hereinafter referred to as "defined areas"); and

> (2) Who experienced one or more of the following physical symptoms: headaches; sinus problems; dizziness; insomnia; trouble breathing; respiratory irritation, or other respiratory problems; chest pains; acute cardiac palpitations; acute gastrointestinal disorder; acute bronchitis; acute onset of asthma; exacerbation of pre-existing asthma; fatigue; nausea; skin rash; temporary hair loss; chronic coughing; chronic nasal discharge; chronic cardiovascular disorder; chronic throat irritation; chronic eye irritation; chronic thyroid disorder; anxiety; and depression, resulting from their exposure to chloroprene or other chemical substance released from the Pontchartrain Works Facility.

Plaintiffs, who live, work, or attend school within 5.5 miles of the PWF, allege that they are regularly exposed to unsafe levels of chloroprene emitted from the facility, which exposes them to a high risk for developing cancer.[1] Ms. Butler and the putative class seek damages in addition to declaratory relief, as well as an injunction, enjoining Denka from emitting chloroprene at a level exceeding .2 micrograms per cubic meter.

---

[1] Ms. Butler in particular alleges that, over the past 16 years, she has lived and worked in close proximity to the PWF, and that she has experienced the following symptoms, which she attributes to chloroprene exposure: acute bronchitis; coughing; throat irritation; redness; swelling; nasal blockage, congestion, and sneezing; sinusitis, nasal polyps; exacerbation of pre-existing asthma; shortness of breath; wheezing; rhinosinusitis; thyroid enlargement; cardiac problems; nausea; vomiting; headaches; fatigue; epistaxis (nose bleeds); anxiety; depression; insomnia; temporary hair loss.

Ms. Butler alleges that Denka and DuPont could have prevented the excessive chloroprene emissions but negligently failed to do so, failed to disclose or warn the community of the high risk of exposure, and failed to timely install necessary equipment to reduce emissions; that Denka/DuPont had material safety data sheets related to the harmful effects of exposure; and that the ultrahazardous activity calls for absolute liability pursuant to Louisiana Code of Civil Procedure article 2315. Ms. Butler also alleges that, to the extent the claims for such remedies become mature, Denka and DuPont would be liable for damages caused by their conduct, including but not limited to the cost of testing class members for exposure to chloroprene, the cost of research to determine the carcinogenicity of exposure to chloroprene emissions, medical monitoring for development of cancer and other maladies due to chloroprene, treatment of physical symptoms, compensation for reasonable and justified fear of cancer due to chloroprene exposure.[2]

---

[2] As for the Department of Environmental Quality and Department of Health, the plaintiffs allege that it did not timely or adequately issue a press release warning the public of the dangers and consequences of chloroprene emissions despite receiving notice from the EPA of the excessive emissions. It is alleged that LDEQ attempted to cover up or shield Denka from liability and has failed to uphold its affirmative statutory duty to conduct routine sampling and testing of the hazardous waste material or toxic chemicals. And, it is alleged, that the DOH failed to investigate

Denka and DuPont removed the case to this Court, invoking this Court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Ms. Butler now moves to remand.

I.

*A.*

Once a case has been removed, the removing party bears the burden of proving that the court has jurisdiction to hear the case. Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993). Ordinarily, any doubt as to the propriety of removal should be resolved in favor of remand. Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008). However, "no antiremoval presumption attends cases invoking [the Class Action Fairness Act], which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014)(citation omitted).

"Congress enacted [the Class Action Fairness Act] to encourage federal jurisdiction over interstate class action lawsuits of national interest." Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 793, 797 (5th Cir. 2007). Because this case was removed pursuant to the Class Action Fairness Act,

---

the cause of symptoms after two dozen students complained of illness since relocating to a school near PWF.

28 U.S.C. § 1332(d), the Court has diversity jurisdiction if there is minimal diversity (if "any member of a class of plaintiffs is a citizen of a State different from any defendant"), a class of 100 or more members, and more than $5,000,000 in controversy. 28 U.S.C. § 1332(d)(2), (d)(5). The removing party bears the burden of establishing jurisdiction under CAFA. Preston, 485 F.3d at 797.

CAFA invests a federal court with subject matter jurisdiction over a "mass action" where monetary claims of 100 or more persons, involving common questions of law or fact, are proposed to be tried jointly. 28 U.S.C. § 1332(d)(11)(B)(i). Each individual plaintiff's claims must meet the $75,000.00 jurisdictional amount in controversy and an aggregate amount in controversy of $5 million must also be met. Id.; Id. at § 1332(d)(6). A court may not exercise supplemental jurisdiction over claims that fail to meet the individual $75,000.00 requirement even if other claims in the mass action meet $75,000.00. Hood ex rel. Miss v. JP Morgan Chase & Co., 737 F.3d 78, 88 n.9 (5th Cir. 2013).

*B.*

The removing defendants submit that this Court has CAFA jurisdiction because there is minimal diversity of citizenship between the plaintiff class and the defendants, the proposed class

6

includes more than 100 putative members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. The Court agrees; the removing defendants have met their burden of establishing that this Court has jurisdiction under CAFA.

First, CAFA requires only minimal diversity of citizenship, where "any member of a class of plaintiffs is a citizen of a State different from any defendant." Because Butler is a resident of LaPlace, Louisiana and DuPont is a citizen of its state of incorporation and the location of its corporate headquarters (both, Delaware), minimal diversity exists for the purposes of CAFA. Butler does not dispute this.[3]

Second, CAFA permits removal of class actions with at least 100 putative class members. Butler alleges that there are "tens of thousands" of putative class members. DuPont points out that this estimate comports with publicly available data from the Census Bureau, which indicated that as of July 1, 2017, the total population of St. John the Baptist Parish was 43,441.[4] The size

---

[3] Butler's arguments -- that the presence of a state or state agency as a defendant destroys diversity or that a state's lack of citizenship bars federal jurisdiction -- have no bearing on the jurisdictional analysis here. It is undisputed that minimal diversity exists, which is all that CAFA requires.

[4] DuPont notes that the number of named plaintiffs in related chloroprene cases, all of whom appear to be purported members of Butler's putative class, totals nearly 4,000.

of Butler's proposed class exceeds CAFA's numerosity requirement of 100.

Third, CAFA confers jurisdiction over matters in which "the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2). "[T]he claims of the individual class members shall be aggregated" to determine the amount in controversy. Id. at § 1332(d)(6). "A removing defendant can meet its [preponderance] burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." Robertson v. Exxon Mobil Corp., 814 F.3d 236, 240 (5th Cir. 2015)(citations omitted). Adopting the test articulated by the Seventh Circuit, the Fifth Circuit has instructed:

> The removing party, as the proponent of federal jurisdiction, bears the burden of describing how the controversy exceeds $5 million. This is a pleading requirement, not a demand for proof. Discovery and trial come later. A removing defendant need not confess liability in order to show that the controversy exceeds the threshold. The removing party's burden is to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands.... The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks. Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.

8

Berniard v. Dow Chemical Co., 481 Fed. Appx. 859, 862 (5th Cir. 2015)(citation omitted)(quoting Spivey v. Vertrue, Inc., 528 F.3d 982, 986 (7th Cir. 2008)).

Here, the defendants submit that it is facially apparent that CAFA's aggregate amount in controversy requirement is met. That tens of thousands of plaintiffs seek injunctive relief, compensatory damages, punitive damages, and attorney's fees resulting from past (since 2011) and continuing chloroprene exposure from the PWF satisfies the necessary pled amount in controversy requirement. See Frazier v. Pioneer Americas LLC, 455 F.3d 542, 545 (5th Cir. 2006)("we are satisfied that the petition, seeking damages for severe injuries suffered by at least 500 people and attorneys' fees, makes it 'facially apparent' that at least $5 million is in controversy, in the aggregate.").[5]

To be sure, CAFA mandates that the Court lacks jurisdiction over any plaintiff whose individual damages do not exceed $75,000. As another Section of this Court has observed, however, it is an open question in the Fifth Circuit whether the removing defendants must show that only one, or at least 100 plaintiffs, seek more than $75,000 to satisfy CAFA's amount in controversy requirement.

---

[5] Whether the actual amount and the pled amount are the same can only be determined at trial on the merits.

See Robertson v. Chevron USA, Inc., No. 15-874, 2016 WL 3667153, at *6 (E.D. La. July 11, 2016)(citing Hood ex rel. Mississippi v. JP Morgan Chase & Co., 737 F.3d 78, 86 n. 4 (5th Cir. 2013)). Here, the defendants have shown that it is facially apparent that at least one plaintiff's request for injunctive relief coupled with requests for punitive and compensatory damages[6] as well as attorney's fees exceeds the $75,000 jurisdictional threshold.[7] And the plaintiff does not identify which individual plaintiffs' claims (if any) should be remanded for failure to meet the individual amount in controversy requirement.[8]

II.

Butler's argument that the Eleventh Amendment bars removal here is incorrect and, now, moot. The state agency defendants

---

[6] Each plaintiff seeks damages for past, present, and future physical injuries, emotional distress, pain and suffering, lost wages, medical expenses and pharmaceuticals, loss of enjoyment of life, expert fees and expenses, and attorney's fees, as well as seeking damages for fear of cancer, lost earning capacity, medical monitoring, and punitive damages.

[7] Unlike other putative class actions removed to this Court from state court (and later remanded), there is no binding stipulation filed by the plaintiffs that would restrict the amount of recovery.

[8] The Court notes that each of the plaintiffs in putative class actions previously remanded specifically renounced recovery in excess of the $75,000 threshold; it would therefore appear that none of those plaintiffs may be included in Butler's proposed class because this Court lacks jurisdiction over any plaintiff that does not individually exceed the $75,000 individual amount in controversy requirement.

have waived Eleventh Amendment immunity from suit in federal court in this case. The plaintiff advances several irrelevant arguments, which the Court need not address.

Finally, the plaintiff does not attempt to show that any of the CAFA exceptions to federal jurisdiction divest the Court of subject matter jurisdiction. Preston, 485 F.3d at 797 ("the parties moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction.").

Accordingly, IT IS ORDERED: that the plaintiff's motion to remand is DENIED.

New Orleans, Louisiana, January 3, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE