UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| *Juanea L. Butler*, individually and as representative of all others similarly situated,<br><br>    Plaintiff;<br>  v.<br><br>*Denka Performance Elastomer LLC, et al.*,<br><br>    Defendants. | Civil Action No.: **18-cv-06685**<br><br>Section:    **"F" (4)**<br><br>Judge:    **Martin L.C. Feldman**<br><br>Magistrate Judge: **Karen Wells Roby** |

**MEMORANDUM IN SUPPORT OF
DUPONT'S RULE 72(a) APPEAL OF THE MAGISTRATE'S ORDER ON PLAINTIFF'S
MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION PETITION**

Plaintiff alleges that since 2012 she has sought medical treatment for health problems caused by exposure to chloroprene emissions from the neoprene units at the Pontchartrain Works facility, which DuPont sold to Defendant Denka Performance Elastomer ("DPE") in 2015.  But Plaintiff waited until 2018 to file suit, so DuPont moved to dismiss Plaintiff's claims as time-barred.  While DuPont's motion to dismiss was pending, Plaintiff filed a motion for leave to amend her complaint, which was referred to the Magistrate Judge.  DuPont opposed the motion on grounds of futility, citing the same prescription arguments in its motion to dismiss.  On March 13, 2019, this Court dismissed Plaintiff's claims against DuPont as prescribed.  (R. Doc. 118, at 13–14.)  Subsequently, the Magistrate Judge ruled (consistent with this Court's dismissal order) that Plaintiff's proposed amended claims against DuPont are prescribed, *except for Plaintiff's strict liability claim*, which the Magistrate Judge ruled is viable because "DuPont maintains

ownership of the land *and buildings that continue to produce the chloroprene* resulting in toxic and hazardous emissions." (R. Doc. 122, at 14 (emphasis added).)

DuPont appeals the Magistrate Judge's ruling as to strict liability because it is based on a clear misstatement or misunderstanding of Plaintiff's allegations and Louisiana law. An element of strict liability under Louisiana law is "garde" (control) over the tort-causing thing. Plaintiff alleges that the neoprene factory, not the land beneath it, emits chloroprene. And although DuPont still owns the land beneath the neoprene factory, Plaintiff unequivocally alleges that DuPont sold "the neoprene manufacturing units of the PWF" to DPE in 2015, and that DPE "still owns and operates" those units. (R. Doc. 64-2, ¶¶ 2–3; *see also* R. Doc. 54, at 9 ("While DuPont did sell the Pontchartrain Works Facility in 2015, they maintained ownership of the underlying land and knowledge of the continuous chloroprene discharge.").) Reading Plaintiff's amended allegations in light of the correct legal standard for garde, Plaintiff's strict liability claim against DuPont fails. Accordingly, the Court should reverse the portion of the Magistrate Judge's order allowing Plaintiff to amend her strict liability claim against DuPont because such amendment would be futile.

## BACKGROUND

On July 13, 2018, DuPont removed Plaintiff's petition—composed of a Class Action Petition and a one-paragraph "First Amending Petition"—based on this Court's CAFA jurisdiction. (R. Doc. 1.) On October 13, 2018, DuPont filed a Rule 12 motion to dismiss Plaintiff's petition, arguing that Plaintiff's claims are barred by Louisiana's one-year statute of limitations, and that Plaintiff failed to state any claims for relief against DuPont. (R. Doc. 17.) Plaintiff responded by arguing that the continuing tort doctrine preserved her claims against DuPont because, "[w]hile DuPont did sell the Pontchartrain Works Facility in 2015, they maintained ownership of the underlying land and knowledge of the continuous chloroprene

discharge." (R. Doc. 54, at 9.)  This Court rejected that argument, ruling that prescription ran from the date DuPont sold the Pontchartrain Works facility to DPE on November 1, 2015. (R. Doc. 118, at 13.)

After DuPont's motion to dismiss was fully briefed, but before the Court issued its ruling, Plaintiff filed a motion for leave to file a second amended class action petition, (R. Doc. 64), which, in accordance with Local Rule 72.1, was automatically referred to the Magistrate Judge. DuPont opposed the motion, arguing that Plaintiff's proposed amendment was futile because her restated claims remain untimely and barred by Louisiana's one-year statute of limitations. (R. Doc. 68.)  DuPont highlighted the fact that even though Plaintiff deleted her verified allegation stating the date of her injury (i.e., that she began seeking medical treatment due to chloroprene exposure in 2012), her amended claims remained time-barred both because her allegations in her operative pleading were binding admissions and because she still alleged that "*some* Plaintiffs" (she is the only Plaintiff) were diagnosed more than one year before filing. (*Id.* ¶ 4 (emphasis added).)  Both the Magistrate Judge and this Court concluded that Plaintiff's claims against DuPont are time-barred based on these allegations.  (R. Doc. 118, at 8–15; R. Doc. 122, at 8–11.)

While Plaintiff attempted to amend her way around her admissions regarding the date of her injury, relevant to this appeal, her allegations regarding the ownership of the Pontchartrain Works facility did not materially change.  Specifically, in both petitions, Plaintiff alleges that DuPont sold the Pontchartrain Works facility to DPE in November 2015 (R. Doc. 1-1, ¶¶ 8, 56; R. Doc. 64-2, ¶ 2), that, since then, DPE has owned and operated the neoprene manufacturing business on that site (R. Doc. 1-1, ¶¶ 2, 38; R. Doc. 64-2, ¶ 2), and that DuPont retained ownership of the land underneath of that facility (R. Doc. 1-1, ¶¶ 8, 56; R. Doc. 64-2, ¶ 3).

Plaintiff does not allege in either petition that DuPont has owned, operated, or otherwise controlled any of the neoprene manufacturing facilities at the Pontchartrain Works site since 2015.

On April 16, 2019, the Magistrate Judge denied in part Plaintiff's motion to amend, holding (consistent with this Court's dismissal order) that Plaintiff's proposed amended claims against DuPont are prescribed. (R. Doc. 122, at 8–11.) However, the Court also granted Plaintiff's motion in part, finding that "DuPont still owns the land *and its allegedly defective appurtenances*," and allowing Plaintiff to plead a strict liability claim against DuPont "[t]o the extent that DuPont maintains ownership of the land and buildings that continue to produce the chloroprene resulting in toxic and hazardous emissions." (*Id.* at 13–14 (emphasis added).)

## LEGAL STANDARD

According to Fed. R. Civ. P. 72, a party may appeal a Magistrate Judge's ruling on any nondispositive pretrial matter to the District Judge within 14 days of the decision. Fed. R. Civ. P. 72(a). In reviewing the order, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* A finding is "clearly erroneous" when "the reviewing Court is 'left with the definite and firm conviction that a mistake has been committed.'" *Wittmann v. Unum Life Ins. Co. of Am.*, C.A. No. 17-9501, 2018 WL 2970873, at *1 (E.D. La. June 13, 2018) (citing *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2008)).

## ARGUMENT

The Magistrate Judge erred by allowing Plaintiff to pursue a strict liability claim against DuPont on the basis that "DuPont maintains ownership of the land and buildings that continue to produce the chloroprene resulting in toxic and hazardous emissions." (R. Doc. 122, at 14.) This holding both misstates Plaintiff's allegations regarding DuPont's alleged ownership of the

neoprene manufacturing business at the Pontchartrain Works facility and misapplies the legal standard for garde under Louisiana law.[1]

To prevail on a strict liability claim pursuant to article 2317, a plaintiff must show, among other things, "that the thing which caused the damages was in the care, custody, and control (garde) of the defendant." *Dupree v. City of New Orleans*, 1999-3651, p. 5 (La. 8/31/00); 765 So. 2d 1002, 1008.  A tortfeasor has garde over a thing if he has "the right of direction and control over [it]," and thus the ability "to prevent it from causing damage to others." *King v. Louviere*, 543 So. 2d 1327, 1329 (La. 1989).  Mere ownership of something is not sufficient to establish garde. *Dupree*, 1999-3651, p. 7; 765 So. 2d at 1008–09 ("Liability is imposed based on custody or garde, not just ownership.").[2]

Nowhere in her proposed second amended complaint does Plaintiff allege that DuPont owns or otherwise controls any of the neoprene units at the Pontchartrain Works facility.  Rather,

---

[1] The Magistrate Judge's opinion also appears to be inconsistent with this Court's ruling. In opposing DuPont's motion to dismiss, Plaintiff insisted that her original petition pled a valid claim of strict liability against DuPont pursuant to La. C.C. art. 2317.1, arguing that DuPont "maintain[ed] ownership of the underlying land" after the 2015 sale of the facility to DPE. (R. Doc. 54, at 13.) In reply, DuPont argued that Plaintiff's strict liability claim fails because Plaintiff did not (and cannot) allege that DuPont had garde over the facility after the sale to DPE. (R. Doc. 58, at 8–9.) This Court did not expressly address Plaintiff's strict liability claim against DuPont, but any such analysis would have been unnecessary, as the Court held that "***any tort claims*** against . . . DuPont have prescribed." (R. Doc. 118, at 14 (emphasis added).) As explained above, Plaintiff's strict-liability allegations against DuPont did not materially change between the original and amended petitions.

[2] In discussing the concept of garde, the Magistrate Judge cites to *Ross v. La Coste Monterville*, 502 So. 2d 1026, 1029 (La. 1987) for the principle that "[a]n owner who transfers to another possession of his thing containing a structural defect continues to have the garde or custody of its structure." (R. Doc. 122, at 13.) But the *Ross* court later clarified that only "an owner of a thing who transfers its possession**, *but not its ownership*** to another, continues to have *garde*." *Ross*, 502 So. 2d at 1032 (emphasis added). Because DuPont transferred *ownership* of the neoprene units to DPE, DuPont no longer has garde over those facilities.  Further, in *Ross*, the defective, tort-causing thing was a ladder, which the defendant owned but loaned to the plaintiff who was subsequently injured by it. *Id.* at 1027.  Here, the allegedly defective, tort-causing thing is the neoprene factory that emits chloroprene (which DuPont does not own), not the land under the factory.

5

Plaintiff's allegations draw a bright line distinction between ownership of the Pontchartrain Works facility generally and ownership of the neoprene units—which emit chloroprene—on that property. At the outset of the complaint, Plaintiff states unequivocally that "*except for the neoprene manufacturing units of the PWF (hereinafter 'neoprene units')*, DuPont retained ownership of the entirety of the PWF land and buildings." (R. Doc. 64-2, ¶ 3 (emphasis added).) She also states unequivocally that in 2015, DPE purchased the neoprene manufacturing business and the units at the Pontchartrain Works facility, "*both which it still owns and operates*." (*Id.* ¶ 2 (emphasis added).)

This distinction carries over to Plaintiff's allegations in the strict liability claim itself, where she states that "each of the Manufacturing Defendants, *during separate periods of time*, have had ownership, care, custody, and control *of the neoprene units of the PWF*." (*Id.* ¶ 52 (emphasis added).) But as to DuPont, Plaintiff only alleges that it has "maintained care, custody, and control *of the PWF* since 1969." (*Id.* ¶ 52 (emphasis added).) That's because, as Plaintiff correctly acknowledges, DPE owned and controlled the neoprene manufacturing business after 2015, and thus Plaintiff could not credibly allege that DuPont had any ownership or control of that business after that point. Plaintiff then alleges six "defects, ruins, and/or vices," three of which expressly pertain to "the neoprene units of the PWF," and three which make no mention of their location (but in no way implicate anything purportedly owned by DuPont). (*Id.*) Even the Magistrate Judge interpreted these allegations as "Butler argu[ing] that the plant contains defects because *the neoprene units* contain faulty or inadequate equipment." (R. Doc. 122, at 12 (emphasis added).)

But the Magistrate Judge overlooked this distinction in her analysis and based her ruling on a misreading of Plaintiff's allegations. First, the Magistrate Judge incorrectly characterized

6

Plaintiff's allegations as saying that "DuPont still owns the land *and its allegedly defective appurtenances*." (*Id.* at 13 (emphasis added).) Then, based on this misstatement of the facts, the Magistrate Judge held that "[t]o the extent that *DuPont maintains ownership of the land and buildings that continue to produce the chloroprene* resulting in toxic and hazardous emissions and that it allegedly continues to harm the claimants, the Court finds that the claim is sufficient to proceed forward against DuPont." (*Id.* at 14 (emphasis added).) Nowhere in her original or amended petition does Plaintiff allege that DuPont retained ownership, direction, control, or anything else that could substantiate a finding that DuPont had garde over the neoprene manufacturing business at the Pontchartrain Works facility. Because Plaintiff *does not* (and cannot) allege that DuPont had any ownership or control of the neoprene units after 2015, the Magistrate Judge's ruling is clearly erroneous, and should be reversed.

## CONCLUSION

For these reasons, DuPont respectfully requests that the District Court reverse the portion of the Magistrate Judge's order allowing Plaintiff to amend as to her strict liability claim against DuPont based on the futility of the proposed amendment.

Dated: April 30, 2019                     Respectfully submitted:

                                         /s Joshua J. Doguet
                                      Deborah D. Kuchler (La. Bar No. 17013)
                                      Sarah E. Iiams (La. Bar No. 22418)
                                      Joshua J. Doguet (La. Bar No. 35111)
                                      **KUCHLER POLK WEINER, LLC**
                                      1615 Poydras Street, Suite 1300
                                      New Orleans, Louisiana 70112
                                      Telephone: (504) 592-0691
                                      Facsimile: (504) 592-0696
                                      dkuchler@kuchlerpolk.com
                                      siiams@kuchlerpolk.com
                                      jdoguet@kuchlerpolk.com

*– and –*

Kevin T. Van Wart, P.C. (T.A.) (Ill. Bar No. 6183921)
Bradley H. Weidenhammer (Ill. Bar No. 6284229)
Rebecca C. Fitzpatrick (Ill. Bar No. 6299773)
Stanley M. Wash (Ill. Bar No. 6310435)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
kevin.vanwart@kirkland.com
bradley.weidenhammer@kirkland.com
rebecca.fitzpatrick@kirkland.com
stan.wash@kirkland.com

*Counsel for Defendant E. I. du Pont de Nemours and Company*