UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUANEA L. BUTLER, *individually and as representative of all others similarly situated* | CIVIL ACTION |
| v. | NO. 18-6685 |
| DENKA PERFORMANCE ELASTOMER LLC, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is E. I. du Pont de Nemours and Company's Rule 72(a) appeal of the magistrate judge's order on plaintiff's motion for leave to file second amended class action petition. For the following reasons, DuPont's request for relief is GRANTED and the magistrate judge's April 16, 2019 Order is REVERSED in relevant part.

**Background**

This environmental tort litigation arises from the production of neoprene at the Pontchartrain Works Facility ("PWF") in St. John the Baptist Parish. During the manufacturing process, neoprene production allegedly exposes those living in the vicinity of the PWF to concentrated levels of chloroprene, a "likely human carcinogen."

1

Juanea L. Butler has lived in LaPlace, Louisiana since 1998. She sued the Louisiana Department of Health ("DOH"), the Louisiana Department of Environmental Quality ("DEQ"), Denka Performance Elastomer LLC ("Denka"), and E.I. DuPont de Nemours and Company ("DuPont") seeking class certification, damages, and injunctive relief in the form of abatement of chloroprene releases from her industrial neighbor, the PWF. These facts are drawn from the allegations advanced in her Class Action Petition for Damages, originally filed on June 5, 2018 in the 40th Judicial District Court for St. John the Baptist Parish.[1]

Effective November 1, 2015, DuPont sold the PWF to Denka, but DuPont retained ownership of the land underlying the facility. In December 2015, the Environmental Protection Agency ("EPA") released a screening-level National Air Toxics Assessment ("NATA"), and classified chloroprene as a likely human carcinogen. EPA's NATA evaluation suggested an acceptable risk exposure threshold for chloroprene: 0.2 µg/m³; that is, chloroprene emissions should stay below .2 micrograms per cubic meter[2] to

---

[1] An amended petition filed in state court amended only the proposed class definition.
[2] The concentration of an air pollutant is measured in units of density.

comply with the limit of acceptable risk threshold (which is a risk of 100 in one million people).

The EPA held its first Parish community meeting to discuss the potential chloroprene emission issues on July 7, 2016. At that meeting, a DOH representative advised that children should not breathe chloroprene. In August of 2016, Denka began 24-hour air sampling every six days. Samples collected at five sampling sites are and continue to exceed the 0.2 µg/m³ threshold. According to Denka's own sampling numbers for chloroprene concentrations, the average chloroprene concentration across all sampling sites from August 2016 to March 2017 has ranged from 4.08 µg/m³ to 6.65 µg/m³.

The EPA has noted that, in addition to the high risk of cancer from exposure to chloroprene, symptoms include

> headache, irritability, dizziness, insomnia, fatigue, respiratory irritation, cardiac palpitations, chest pains, nausea, gastrointestinal disorders, dermatitis, temporary hair loss, conjunctivitis, and corneal necrosis.

The EPA has further detailed that

> acute exposure may: damage the liver, kidneys, and lungs; affect the circulatory system and immune system; depress the central nervous system; irritate the skin and mucous membranes; and cause dermatitis and respiratory difficulties in humans.

On October 7, 2016, Denka submitted modeling results for chloroprene concentrations surrounding the PWF to the Louisiana Department of Environmental Quality ("DEQ") for the period of 2011

through 2015, showing concentrations well above the 0.2 µg/m³ threshold. At a meeting on December 8, 2016, DEQ Secretary Chuck Brown dismissed those expressing concern about the chloroprene concentrations as "fearmongerers" and said "forget about 0.2[µg/m³]."

The EPA's National Enforcement Investigation Center ("NEIC") conducted a Clean Air Act ("CAA") inspection of the Pontchartrain Works facility in June 2016. A copy of the redacted inspection report from the EPA's CAA inspection was publicized on April 3, 2017. The NEIC inspection report revealed various areas of non-compliance by both DuPont and Denka in their operation of the facility, including failure to adhere to monitoring, recordkeeping, and reporting requirements for the chloroprene vent condenser; failure to replace leaking valves; failure to include appropriate emissions factors in air permit application materials; and failure to institute appropriate emissions controls for the chloroprene Group I storage tank.

In her original and amended class action petition, Ms. Butler alleges that DuPont and Denka have and continue to emit chloroprene at levels resulting in concentrations exceeding the upper limit of acceptable risk. The plaintiff further alleges that DEQ and DOH failed to warn the plaintiff and her community about chloroprene

4

exposure. In her petition, prior to the amendment, she alleged that:

> Due to the Plaintiff's exposure to the chloroprene emissions, she has experienced symptoms attributable to exposure of said chemical. Since April 2012 until current date, the Plaintiff has continually sought medical attention for the following conditions: acute bronchitis; coughing; throat irritation; redness and swelling; nasal blockage, congestion, and sneezing; sinusitis and nasal polyps; exacerbation of pre-existing asthma; shortness of breath; wheezing; rhinosinusitis; thyroid enlargement; cardiac problems; nausea; vomiting; headaches; fatigue; epistaxis (nose bleeds); anxiety; depression; insomnia; and temporary hair loss.

Seemingly at random, the plaintiff invoked as causes of action general Louisiana state constitutional provisions. She seeks injunctive relief in the form of abatement of chloroprene releases to "comply" with the EPA's suggested 0.2 µg/m³ threshold; damages for deprivation of enjoyment of life; damages for medical expenses; damages for loss of wages; damages for pain and suffering; punitive damages; and additional damages including medical monitoring to the extent personal injury claims become mature.

Denka and DuPont jointly removed the lawsuit, invoking this Court's diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The Court denied the plaintiff's motion to remand. See Order and Reasons dtd. 1/3/19 (denying motion to remand); see Order and Reasons dtd. 2/20/19 (denying motion to reconsider). DuPont, Denka, DEQ, and DOH moved to dismiss the

plaintiff's claims. Meanwhile, while the motions to dismiss were pending, the plaintiff moved for leave to amend her complaint; the contested motion to amend was automatically referred to the magistrate judge. DuPont opposed the motion to amend on the ground of futility, resorting to the same prescription arguments advanced in its motion to dismiss.

On March 13, 2019, the Court granted the motions to dismiss with the proviso regarding the submitted motion for leave to amend pending before the magistrate judge. On April 16, 2019, the magistrate judge granted in part and denied in part the plaintiff's motion for leave to file second amended class action petition. DuPont now appeals from the portion of the magistrate judge's April 16, 2019 Order insofar as it allows the plaintiff to amend her complaint to state a strict liability claim against DuPont.

I.
*A.*

Pursuant to Federal Rule of Civil Procedure 72(a), a party may appeal the ruling of the magistrate judge to the district judge. A magistrate judge is afforded broad discretion in the resolution of non-dispositive motions. See Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A). If a party objects to a magistrate judge's ruling on a non-dispositive matter, the Court will disturb a magistrate's ruling only when the ruling is "clearly

6

erroneous or is contrary to law." See Fed. R. Civ. P. 72(a); see also Castillo v. Frank, 70 F.3d 382, 385 (5th Cir. 1995). A finding is "clearly erroneous" when the reviewing Court is "left with the definite and firm conviction that a mistake has been committed." United States v. Stevens, 487 F.3d 232, 240 (5th Cir. 2008)(quoting United States. v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

*B.*

Louisiana Civil Code article 2317 states, "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody." Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

To prevail on a custodial liability claim, a plaintiff must prove: "(1) the object was in the defendant's custody; (2) the thing contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective condition caused the damage; and (4) the defendant knew or should have known of the defect."

Cormier v. Dolgencorp, Inc., 136 Fed. Appx. 627, 627–28 (5th Cir. 2008)(citing La. C.C. arts. 2317, 2317.1).[3]

To impose custodial or strict liability, custody is key; the defendant must be in custody of the object that is the cause of the plaintiff's injury. Venezia v. ConocoPhillips Co., No. 12-2168, 2014 WL 107962, at *10 (E.D. La. Jan. 9, 2014)(citing Ainsworth v. Shell Offshore, Inc., 829 F.2d 548, 551 (5th Cir. 1987)). "Custody" means "supervision and control." Id. To be sure, ownership presumptively establishes the requisite benefit, control, and authority to find custody or garde. See Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La. 1991). But this presumption is rebuttable by the owner if the owner neither controlled the object, nor did it receive a substantial benefit from its ownership. Id.; Venezia, 2014 WL 107962, at *10. Similarly, even absent ownership a person can have custody or garde over something if he "bears such a relationship as (1) to have the

---

[3] Under Louisiana law, a claim for "strict" liability requires that a duty of care was breached, just as a negligence claim does. Bd. of Commissioners of Southeast La. Flood Protection Authority-East v. Tennessee Gas Pipeline Company, LLC, 850 F.3d 714, 729 (5th Cir. 2017)(citing Oster v. Dep't of Transp. & Dev., 582 So.2d 1285, 1288 (La. 1991)). In fact, "[t]here is essentially no difference between the two types of claims under Louisiana law." Id. A custodian's duty is the same as that under the general negligence doctrine of article 2315. Carroll v. American Empire Surplus Lines Ins. Co., 289 F. Supp. 3d 767, 771 (E.D. La. 2017)(citation omitted)(Milazzo, J.).

right of direction and control over [it], and (2) to draw some kind of benefit from [it]." See Anh Ngoc Vo v. Chevron, U.S.A., Inc., No. 13-1794, 2013 WL 3983934, at *5 (E.D. La. July 31, 2013)(Engelhardt, J.)(quoting King v. Louviere, 543 So.2d 1327, 1329 (La. 1989)); see also Coulter v. Texaco, 117 F.3d 909, 913 (5th Cir. 1997). Both factors must be present. Id.

Notably, when injury is caused by a specific thing, that thing is considered "the object" with respect to the issue of custody; and, the property on which the injury occurred is not considered "the object" unless an inherent defect in the property caused the injury. See Doughty v. Insured Lloyds Ins. Co., 576 So. 2d 461, 464 (La. 1991)(defective machinery located on the property was considered "the object", not the property itself); see also Dupree v. City of New Orleans, 765 So. 2d 1002 (La. 2000)(where cause of the injury was a cave-in on a New Orleans city street, property was considered "the object" with respect to the issue of custody).

II.

On March 13, 2019, the Court dismissed as prescribed the plaintiff's claims against DuPont. A contested motion to amend the complaint had been argued and submitted to the magistrate judge at that time. About a month later, the magistrate judge ruled that the plaintiff's proposed amended claims against DuPont are prescribed, except for the plaintiff's strict liability claim.

That strict liability claim, the magistrate judge wrote, was viable because "DuPont maintains ownership of the land and buildings that continue to produce the chloroprene resulting in toxic and hazardous emissions." DuPont challenges this ruling as to strict or custodial liability because it is based on (i) a misstatement of the plaintiff's allegations regarding DuPont's ownership and (ii) a misapplication of the standard for garde under Louisiana law. The Court agrees.

The dispute on appeal concerns whether the plaintiff alleges facts that, if proved, demonstrate that DuPont maintained ownership of the neoprene production units, in other words, that "the thing which caused the damages was in the care, custody, and control (garde) of" DuPont. See Dupree, 765 So. 2d at 1008. If so, then the Court must affirm the magistrate judge. If not, then the magistrate judge erred and the portion of her order granting leave to amend as to DuPont must be reversed. Because the plaintiff alleges that, since 2015, only Denka controlled the neoprene units and operated the allegedly faulty chloroprene emitting equipment during the neoprene manufacturing process, reversal is warranted.[4]

---

[4] The plaintiff advances no arguments that persuade the Court to affirm the magistrate judge's ruling. The plaintiff incorrectly argues that DuPont's appeal is untimely. DuPont filed its appeal on April 30, which was 14 days after the April 16 ruling. See

The plaintiff alleges that DuPont owned and operated the PWF from 1969 to 2015, then sold it to Denka. "During the sale," the plaintiff alleges, "DuPont retained ownership of the entirety of the PWF land and buildings, including the building where it currently manufactures Kevlar." The plaintiff also alleges that "Denka purchased DuPont's neoprene manufacturing and production business and units in 2015." The plaintiff alleges that, since 2015, "[w]hen Denka purchased DuPont's neoprene manufacturing and production business and units," Denka has operated the neoprene units, has manufactured neoprene, and thereby emitted chloroprene. It is the health hazards of chloroprene exposure that form the basis of the plaintiff's causes of action. As to the strict liability cause of action in particular, the plaintiff states that "each of the Manufacturing Defendants, **during separate periods of time**, have had ownership, care, custody, and control of the neoprene units of the PWF; and DuPont has maintained care, custody, and control of the PWF since 1969 [and] the neoprene units and the PWF contained defects, ruin, and/or vices[.]" The defects listed

---

Darouiche v. Fid. Nat. Ins. Co., 415 Fed. Appx. 548, 552 (5th Cir. 2011)(citing Fed. R. Civ. P. 83(a)(2)). Plaintiff's counsel should avoid advancing frivolous arguments that amplify his own dilatory conduct: plaintiff's counsel filed the second amended class action petition 10 days late. Counsel shall be mindful of 28 U.S.C. § 1927.

include certain allegedly faulty properties of the valves, tanks, or other aspects of the neoprene units.

Reading the plaintiff's amended allegations in light of the legal standard for garde, the plaintiff's strict liability claim against DuPont fails as a matter of law and, therefore, leave to amend this claim should have been denied as futile. Nowhere in her original or amended petitions does the plaintiff allege that after 2015 DuPont retained ownership, direction, control, or anything approximating garde over the neoprene manufacturing operations or neoprene units (the things that are "the objects" with respect to the issue of custody) at the PWF. There are no factual allegations that, if proved, would support imposition of custodial or strict liability on DuPont. Standing alone, mere ownership of the "land and buildings" of the PWF is insufficient to state a plausible strict or custodial liability claim against DuPont when the plaintiff's own allegations state that, since 2015, Denka alone had custody over and operated the objects allegedly causing the harm, the allegedly faulty neoprene units operated during the manufacturing process. Because the challenged amendment would be futile, the Court must reverse that portion of the magistrate judge's order allowing the plaintiff to amend her strict liability claim against DuPont.

Accordingly, the relief requested by DuPont in its Rule 72(a) appeal of the magistrate judge's April 16, 2019 Order on the plaintiff's motion for leave to file a second amended class action petition is GRANTED; the magistrate judge's order is REVERSED in relevant part, and the plaintiff's motion to amend her strict liability claim as to DuPont is DENIED as futile.

New Orleans, Louisiana, June 6, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE