UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUANEA L. BUTLER, *individually and as*                  CIVIL ACTION
*representative of all others similarly situated*

v.                                                        NO. 18-6685

DENKA PERFORMANCE ELASTOMER, LLC, ET AL.        SECTION F

ORDER AND REASONS

Before the Court is a Rule 12(b)(6) motion to dismiss filed by defendant Louisiana Department of Health.  For the reasons that follow, the motion is GRANTED and the Department of Health is DISMISSED WITH PREJUDICE.

**Background**

This environmental tort litigation arises from the production of neoprene at the Pontchartrain Works Facility ("PWF") in St. John the Baptist Parish.  Neoprene production allegedly exposes those living in the vicinity of the PWF to concentrated levels of chloroprene above the upper limit of acceptable risk and allegedly may result in a risk of cancer more than 800 times the national average.

Juanea L. Butler has lived in LaPlace, Louisiana since 1998. She sued the Louisiana Department of Health ("LDH"), the Louisiana Department of Environmental Quality ("DEQ"), Denka Performance Elastomer LLC ("Denka"), and E.I. DuPont de Nemours and Company

1

("DuPont") seeking class certification, damages, and injunctive relief in the form of abatement of chloroprene releases from her industrial neighbor, the PWF.  Ms. Butler's Class Action Petition for Damages was filed on June 5, 2018 in the 40th Judicial District Court for St. John the Baptist Parish.

Effective November 1, 2015, DuPont sold the PWF to Denka, but DuPont retained ownership of the land underlying the facility.  In December 2015, the Environmental Protection Agency ("EPA") released a screening-level National Air Toxics Assessment ("NATA"), and classified chloroprene as a likely human carcinogen. EPA's NATA evaluation suggested an acceptable risk exposure threshold for chloroprene: 0.2 μg/m3; that is, chloroprene emissions should stay below .2 micrograms per cubic meter2 to comply with the limit of acceptable risk threshold (which is a risk of 100 in one million people).

The EPA's National Enforcement Investigation Center ("NEIC") conducted a Clean Air Act ("CAA") inspection of the Pontchartrain Works facility in June 2016.  A copy of the redacted inspection report from the EPA's CAA inspection was publicized on April 3, 2017.  The NEIC inspection report revealed various areas of non-compliance by both DuPont and Denka in their operation of the facility, including failure to adhere to monitoring, recordkeeping, and reporting requirements for the chloroprene vent condenser; failure to replace leaking valves; failure to include

appropriate emissions factors in air permit application materials; and failure to institute appropriate emissions controls for the chloroprene Group I storage tank.

In her original and amended class action petition, Ms. Butler alleges that DuPont and Denka have and continue to emit chloroprene at levels resulting in concentrations exceeding the upper limit of acceptable risk.  The plaintiff further alleges that DEQ and LDH failed to warn the plaintiff and her community about chloroprene exposure.  She alleges that:

> Due to the Plaintiff's exposure to the chloroprene emissions, she has experienced symptoms attributable to exposure of said chemical.  Since April 2012 until current date, the Plaintiff has continually sought medical attention for the following conditions: acute bronchitis; coughing; throat irritation; redness and swelling; nasal blockage, congestion, and sneezing; sinusitis and nasal polyps; exacerbation of pre-existing asthma; shortness of breath; wheezing; rhinosinusitis; thyroid enlargement; cardiac problems; nausea; vomiting; headaches; fatigue; epistaxis (nose bleeds); anxiety; depression; insomnia; and temporary hair loss.

Seemingly at random, the plaintiff invokes as causes of action Louisiana state constitutional provisions.  She seeks injunctive relief in the form of abatement of chloroprene releases to "comply" with the EPA's suggested 0.2 μg/m3 threshold; damages for deprivation of enjoyment of life; damages for medical expenses; damages for loss of wages; damages for pain and suffering; punitive damages; and additional damages including medical monitoring to the extent personal injury claims become mature.

Denka and DuPont jointly removed the lawsuit, invoking this Court's diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The Court denied the plaintiff's motion to remand. See Order and Reasons dtd. 1/3/19 (denying motion to remand); see Order and Reasons dtd. 2/20/19 (denying motion to reconsider). This Court granted motions to dismiss filed by DuPont, Denka, DEQ, and LDH. The plaintiff appealed, and the Fifth Circuit affirmed in part and reversed in part, remanding this case for the Court's review. The Fifth Circuit affirmed this Court's dismissal of custodial liability claims against DuPont and Denka, this Court's dismissal of all claims against Denka for failure to state a claim, and this Court's dismissal of declaratory relief claims against the Louisiana DEQ. The Fifth Circuit reversed the Court's finding that the claims against Denka, DuPont, and the LDH were prescribed and remanded. The Court now considers the LDH's motion to dismiss for failure to state a claim.

## Analysis

### I. Rule 12(b)(6) Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for the dismissal of a complaint for failure to state a claim upon which relief can be granted. Such motions are rarely granted because they are viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5 Cir. 1997) (quoting Kaiser

Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5 Cir. 1982)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5 Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5 Cir. 2012) (en banc)). The Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Gonzalez v. Kay, 577 F.3d 600, 603 (5 Cir. 2009) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' ", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

   II. Plaintiff Alleges no Legally Cognizable Duty

   "Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A). "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." La. Civ. Code art. 2316.

Courts employ the duty-risk analysis to determine whether to impose liability based on these broad negligence principles.  See Lemann v. Essen Lane Daiquiris, 923 So. 2d 627, 633 (La. 2006).  The analysis requires proof by the plaintiff of five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).  Id. "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."  Id.

Here, the LDH submits that Butler has failed to demonstrate the existence of a legally cognizable duty.  As a Department of the State of Louisiana, the LDH submits, it has only the duties and responsibilities delegated to it by the Louisiana Legislature. The LDH asserts that it has not been given such a duty with regard to the issues in this case.  The Court agrees.  As it previously noted in a footnote, "[The LDH] is responsible for state environmental quality functions only as delegated to it by the legislature.  The legislature has specifically delegated powers

and duties with respect to air quality control to DEG, not [the LDH]."  Order and Reasons dtd. 3/13/19 at 15 n.7.

Plaintiff raises two counterarguments to this conclusion, neither of which the Court finds compelling.  First, plaintiff cites to animating statutes and Louisiana Supreme Court precedent in an attempt to locate a legally cognizable duty.  Plaintiff asserts that the LDH is required to "take such action as is necessary to accomplish the subsidence and suppression of diseases of all kinds," and "perform functions … which relate to the general health of the people of the state," among other purported duties. La. R.S. § 40:5A(1), La. R.S. § 36:251B.  While these statutes describe the LDH's general role in this state, they do not suffice to show a specific, legally cognizable duty on which a private plaintiff can rely for a negligence claim.  As the LDH properly notes in a reply brief, plaintiff's theory of the LDH's duties would allow for a *prima facie* negligence claim in almost any case in which an individual has suffered from a disease in this state.

Alternatively, the plaintiff again relies on a purported general duty of care created by the Louisiana Supreme Court.[1]  This so-called general duty does not suffice.  As the Fifth Circuit

---

[1] Plaintiff cites <u>Pitre v. Opelousas Gen. Hosp.</u>, 530 So. 2d 1151, 1157 (La. 1988), which reads in part: "each person owes a duty to take reasonable care to avoid acts or omissions which he can reasonably foresee would be likely to injure a present or future member of society…" (citations omitted).

noted in affirming this Court's reasoning dismissing the claims against another party in this same case, "Butler's retreat to generalized grievances is unavailing.  While Louisiana law does impose a 'universal duty' on defendants in a negligence action to use 'reasonable care,' … plaintiffs are still required to assert a 'specific standard' of care."  <u>Butler</u>, 16 F.4th at 444–45. Without allegations suggesting the source of an enforceable duty, the plaintiff is unable to plead a plausible claim for negligence. As with the plaintiff's responses to other motions to dismiss before this Court, plaintiff's counsel – inexcusably – declines to even acknowledge the Fifth Circuit's binding decision in this very case.  It seems kind to point out that counsel should know better.

### III. The Motion is Properly Before the Court

Alternatively, the plaintiff requests that the Court strike the LDH's motion as redundant.  First, she submits that this motion is in violation of Rule 12(g)(2), which reads in part: "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  The LDH raised – and this Court did not reach – the failure to state a claim in its earlier motion to dismiss.  It was not omitted from the earlier motion; this argument fails.  Alternatively, plaintiff's counsel asks this Court to reject the motion as redundant.  Again, the Court did not reach this question in its previous Order and

Reasons, and so the motion is patently not redundant.  Plaintiff's responses to this motion border on the frivolous, to say the least.

                              *     *     *

        Accordingly,  IT  IS  ORDERED:  that  defendant  Louisiana Department  of  Health's  motion  to  dismiss  is  GRANTED.   The Department of Health is hereby DISMISSED WITH PREJUDICE.

        New Orleans, Louisiana, January 11, 2022

        _____
                MARTIN L. C. FELDMAN
            UNITED STATES DISTRICT JUDGE